UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE LEE BOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24 CV 6 CDP |
| | ) | |
| CAITLIN DOUGLAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Self-represented plaintiff, Missouri state prisoner Antoine Lee Boyle, brings this action under 42 U.S.C. § 1983 alleging that defendants Caitlin Douglas and Claryssa Martin, correctional officers at Southeast Correctional Center (SECC), failed to protect him from a prisoner assault on February 7, 2023, despite being aware of the likely potential for such assault and witnessing it without intervening.[1] Douglas and Martin now move for summary judgment on Boyle's claim. Because they are entitled to qualified immunity on the claim, I will grant their motion.

## I. Background

[1] Upon initial review of the complaint under 28 U.S.C. § 1915(e)(2), I dismissed Boyle's claim of deliberate indifference to serious medical needs as well as all claims brought against the defendants in their official capacities and all claims against the Missouri Department of Corrections and other individually named defendants.

CO Ethan Freeman[2] informed Boyle on February 7, 2023, that he was getting a new cellmate, after which COs Freeman, Douglas, and Martin escorted inmate Shawn Boarders to Boyle's cell. As they approached Boyle's cell, Boyle stated that he did not trust Boarders. CO Freeman removed Boarders' handcuffs upon Boarders' entry to Boyle's cell, whereupon Boarders immediately began to attack Boyle by striking him about the head and face. Boyle was handcuffed during the assault. CO Freeman stopped the attack by discharging his pepper spray.

Boyle asserts that defendants Douglas and Martin failed to protect him from Boarders' assault and failed to intervene when the assault began. Douglas and Martin move for summary judgment, arguing that the undisputed facts show that Boyle's Eighth Amendment claim fails on its merits. They also argue that Boyle failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act and, further, has no compensatory damages as required by the PLRA. Finally, Douglas and Martin contend that they are entitled to qualified immunity on Boyle's claim. Boyle has not responded to the motion, and the time to do so has passed.

## II. Summary Judgment Standard

[2] I dismissed Boyle's claims against Freeman in September 2025 for Boyle's failure to effectuate service of process on him.

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007).

Initially, the moving party must demonstrate the absence of an issue for trial. *Celotex,* 477 U.S. at 323. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in his pleadings or in general denials of the movant's assertions but must instead proffer admissible evidence that demonstrates a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 910 (8th Cir. 2010); *Howard v. Columbia Pub. Sch. Dist.,* 363 F.3d 797, 800-01 (8th Cir. 2004). A verified complaint is equivalent to an affidavit for summary judgment purposes. *Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (per curiam).

Under Local Rule 4.01(E), moving parties must include a Statement of Uncontroverted Material Facts with their memorandum, with citations to the record establishing each relevant fact. The Rule also requires that every memorandum in opposition must be accompanied by a document responding to the Statement of

Uncontroverted Material Facts that sets forth each relevant fact as to which the opposing party contends a genuine issue exists. E.D. Mo. L.R. 4.01(E).

> The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. *All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.*

*Id.* (emphasis added). Here, Boyle did not respond to defendants' motion for summary judgment or their Statement of Uncontroverted Material Facts. Under Local Rule 4.01(E), therefore, I deem admitted the facts set out in that Statement. *See Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material facts, it was deemed admitted under E.D. Mo. L.R. 4.01(E)); *see also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.") (internal quotation marks and citation omitted). Boyle's self-represented status does not excuse him from complying with the Rule. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## III. Evidence Before the Court on the Motion

The following recitation of facts is taken from defendants' Statement of Uncontroverted Material Facts (ECF 83) and my independent review of the record

in this case, including Boyle's verified complaint. I largely adopt defendants' Statement, given that Boyle did not respond to the motion for summary judgment and thus failed to specifically controvert defendants' proffered material facts.

On February 7, 2023, Boyle was housed in administrative segregation at SECC. At around 11:00 p.m. that night, CO Freeman told Boyle that he was getting a new cellmate. Boyle looked out his cell door and saw CO Martin removing inmate Shawn Boarders from his cell and placing handcuffs on him. Thereafter, COs Freeman, Martin, and Douglas escorted Boarders to Boyle's cell. Boyle told Freeman and Douglas that he did not trust Boarders.[3]

Boyle was handcuffed when Boarders was placed into his cell. CO Freeman uncuffed Boarders after he entered Boyle's cell, whereupon Boarders began to assault Boyle by striking him while Boyle remained handcuffed. CO Freeman discharged his pepper spray to stop the assault. Boarders stopped his attack and was removed from Boyle's cell. He did not return.

On April 12, 2023, Boyle completed an Informal Resolution Request describing the assault and complaining that CO Freeman sprayed him with pepper spray, left him on "the bench" for two hours, and did not detox his cell. He also complained that "staff" failed to provide him with proper safety and security.

[3] Boyle asserts in his complaint that he told CO Freeman that he did not trust Boarders. At his deposition, Boyle testified that he told Douglas.

Upon denial of that IRR, Boyle filed an Offender Grievance restating his complaints against CO Freeman and "staff." On appeal of his grievance denial, Boyle restated his complaints and added that he and Boarders should have been considered administrative enemies given Boarders' derogatory remarks made to unidentified staff about Boyle. Neither Douglas nor Martin were named in any of Boyle's grievance documents.

Boyle had never experienced a physical altercation with Boarders before February 7, 2023. Boyle was not designated as an administrative or declared enemy of Boarders on or before February 7, 2023; nor did Boyle ever submit any request or grievance to prison staff, either written or oral, that Boarders posed a specific threat to his safety if they were housed together. Boyle never requested protective custody or a cell assignment related to any threat by Boarders. Boyle never informed either Douglas or Martin that Boarders posed a specific threat to his safety if he and Boarders were housed together. Boyle only told Douglas when Boarders was brought to his cell on February 7 that he did not trust Boarders. Boyle did not describe to either Douglas or Martin that Boarders was an enemy. Boyle has no evidence that either Douglas or Martin was responsible for assigning Boarders to his cell as his cellmate.

## IV. Discussion

A. PLRA Exhaustion

Douglas and Martin contend that Boyle was required to specifically name them in his prison grievance forms in order to exhaust his administrative remedies on the claim he raises here against them. They argue that Boyle's failure to so name them in his grievance forms requires dismissal under the PLRA for failure to exhaust. I disagree.

The PLRA requires exhaustion of available administrative remedies before a prisoner can bring any § 1983 action with respect to prison conditions. 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, the prisoner must complete the administrative review process in accordance with the applicable rules set out by the respective prison's grievance procedure. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Townsend v. Murphy*, 898 F.3d 780, 784 (8th Cir. 2018).

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but *it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion*.

*Jones*, 549 U.S. at 218 (emphasis added).

Notably, nothing in the PLRA imposes a "name all defendants" requirement. *Jones*, 549 U.S. at 218. And nothing before the Court shows that SECC's or the Missouri Department of Corrections' grievance procedures contain such a

requirement.[4] Although defendants cite *Townsend* to argue that "[t]he Eighth Circuit has held that the grieving inmate must name the prison officials in their grievance forms in order to exhaust their administrative remedies if required by the institution's grievance procedure" (ECF 81, Defts' Sugg. in Supp. at p. 14), the grievance procedure applicable in *Townsend* was for an Arkansas prison facility, not one in Missouri. I will not apply Arkansas' prison grievance procedure to Boyle's grievances here involving prison conditions at SECC.

As there is no evidence before me that Missouri's prison grievance procedure applicable to inmate grievances at SECC requires an inmate to specifically name the alleged offending official in grievance forms in order to exhaust the administrative grievance process, I cannot conclude that Boyle's failure to specifically identify Douglas and Martin in his inmate grievance forms renders his claim against them here unexhausted.

B. Qualified Immunity

Qualified immunity protects government officials who are sued in their

[4] Defendants cite to an unpublished case that cites to the Missouri Department of Corrections' website that purports to contain the MDOC's Offender Rulebook. *See* ECF 81, Defts' Sugg. in Supp. at p. 13, n.3 (citing *Graves v. Missouri Dep't of Corr.*, No. 4:24-CV-01693-JMD, 2026 WL 179934, at *3 nn.2, 3 (E.D. Mo. Jan. 23, 2026) (citing https://doc.mo.gov/sites/doc/files/media/pdf/2020/03/Offender_Rulebook_REVISED_2019.pdf)). Clicking on that hyperlink, however, results in a "Page not found" message. Likewise, an independent search for the Offender Rulebook on MDOC's website returns a "Page not found" message. In the future, it would behoove State counsel in similar cases to attach a copy of the Offender Rulebook as an exhibit to support their arguments rather than relying on a broken hyperlink cited in an unrelated unpublished case.

individual capacities for money damages under § 1983. *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013); *Wolfe v. City of Town & Country*, 599 F. Supp. 3d 784, 790 (E.D. Mo. 2022). The qualified immunity analysis involves two inquiries: (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008). With respect to the "central facts of the case," I must "view the evidence . . . in the light most favorable to" Boyle, the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

Boyle has the burden to show that the right was clearly established at the time of the alleged violation. *Quraishi v. St. Charles Cnty., Mo.*, 986 F.3d 831, 835 (8th Cir. 2021) (citing *Davis v. Scherer*, 468 U.S. 183, 197 (1984)). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would [have understood] that what [she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The state of the law at the time of the alleged violation – whether articulated by precedent, controlling authority, or a robust consensus of cases of persuasive authority – must give

officials fair warning that their conduct is unlawful. *Quraishi*, 986 F.3d at 835. *See also Taylor v. Barkes*, 575 U.S. 822, 825 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). The legal principle must "clearly prohibit the officer's conduct in the particular circumstances before [her]." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

At the time of the alleged assault here, the law was clearly established that the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). "Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young*, 508 F.3d at 872. To establish an Eighth Amendment failure-to-protect claim, Boyle must show that the defendant prison officials were deliberately indifferent to a substantial risk of serious harm. *Farmer,* 511 U.S. at 828; *Arnett v. Norris*, 160 F.4th 921, 926 (8th Cir. 2025) (citing *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002)). The Eighth Circuit has recognized that this is a "difficult standard to meet." *Chernyy v. Roesler*, 184 F.4th 1070, 1075 (8th

Cir. 2026). Deliberate indifference requires "conscious disregard" rising "to the level of criminal recklessness." *Id.* (citation modified).

Douglas and Martin are entitled to qualified immunity on Boyle's claim of failure-to-protect because the evidence before the Court shows that they did not know that a substantial risk of serious harm to Boyle existed nor did they act inappropriately with the knowledge they had. *Chernyy*, 184 F.4th at 1075 (quoting *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015)). When Boarders was brought to Boyle's cell on February 7, 2023, Boyle expressed to Douglas that he did not trust Boarders. That amorphous statement did nothing to convey that Boarders was a threat to Boyle's safety or that Boyle needed protection from him. There were no previous altercations between Boarders and Boyle, no reported threats by Boarders involving Boyle, nor any requests by Boyle – either formally or informally – that Boarders be considered an enemy. As there was no information from which a reasonable officer could conclude that Boarders was a threat to Boyle, qualified immunity is appropriate on Boyle's failure-to-protect claim arising from Boarders' surprise attack. *See Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002).

Even assuming for the sake of argument that Boarders' alleged derogatory remarks made earlier about Boyle can be considered threatening (which, to be clear, there is no evidence they were), there is no evidence that either Douglas or

Martin knew of those remarks when they escorted Boarders to Boyle's cell on February 7, 2023. In view of no known threats to Boyle's safety, Boyle's statement that he did not trust Boarders was insufficient to put the escorting prison officials on notice that Boyle faced a substantial risk of harm if Boarders was admitted to his cell. Because Douglas and Martin did not know of any substantial risk of harm, it cannot be said that their escorting Boarders to Boyle's cell was in conscious disregard of any such risk or that a reasonable official would consider it so.

To the extent Boyle's complaint can be read to assert that neither Douglas nor Martin intervened when Boarders attacked him, this is not a case where Douglas and Martin stood by and did nothing while no effort was made to protect Boyle. The undisputed evidence shows that CO Freeman discharged pepper spray that successfully ended Boarders' assault, and that Boarders was removed from Boyle's cell and did not return. I am not aware of any authority clearly establishing a prison official's constitutional duty to intervene in a prisoner altercation in circumstances where another official has already intervened and used effective methods of control. *Cf. Arnold v. Jones*, 891 F.2d 1370, 1373 (8th Cir. 1989) (qualified immunity granted to prison officials who did not physically intervene in prisoner attack when other methods ended the assault). Given that circumstance, it was reasonable for Douglas and Martin to not interfere with CO

Freeman's successful intervention.

The evidence before the Court does not show that either Douglas or Martin knew that Boyle faced a substantial risk of serious harm by their escorting Boarders to his cell or that it was clearly established that a reasonable officer would consider Douglas's and Martin's conduct inappropriate in the circumstances. Douglas and Martin are therefore entitled to qualified immunity on Boyle's Eighth Amendment claim that they failed to protect him from serious harm and failed to intervene during a prisoner assault. *Chernyy*, 184 F.4th at 1075.

As defendants are entitled to qualified immunity on Boyle's claim, their arguments that they are entitled to summary judgment on the merits of the claim and for Boyle's failure to satisfy the PLRA's requirement that he suffer compensatory damages are moot and will not be addressed.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Caitlin Douglas and Claryssa Martin's Motion for Summary Judgment [80] is **GRANTED**.

A separate Judgement is entered herewith.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2026.